Good morning. The first matter of the day is National Labor Relations Board v. Various Parties and New Vista Nursing v. National Labor Relations Board consolidated appeals. Mr. Capuzzi? Am I pronouncing it correctly? My Italian is far from flawless. If we have time, I'll teach a few words. I know a few. The ones I know are not very helpful in this setting. The ones I know aren't repeatable, so that's what I was implying. May it please the court. My name is Luke Capuzzi. I'm with the law firm of Capuzzi Adler in Harrisburg, Pennsylvania. And I represent the petitioner, New Vista Nursing Rehabilitation Center, which is a 340-bed nursing facility located in Newark, New Jersey. Why isn't the August 26th decision of the NLRB a final order and all we have to look at? Well, there's a couple reasons for that, Judge. First of all, as we argued in the briefs, the August 26th order was not really entered on August 26th. Is that your best argument? Pardon? Is that your best argument? No, I don't believe it is. Well, why don't you start with your best argument rather than the defects that you allege occurred here with respect to the August 28th order as dated and its filing. I do think that's a valid argument, Judge. I really do. In fact, I don't believe that there was a final order. In that you have limited time and you've conceded that it's not your best argument. It's not my best argument. I'd proceed accordingly. Okay. I believe that it's pretty clear based on the record that we put before the regional director that the LPNs in this particular case are supervisory. And as a result, we believe that the board's order of August 26th should not be enforced by this court. So, we've raised, the panel has raised sui sponte and questions to counsel a jurisdictional issue here. And I would ask, even though it is a sui sponte raised issue, not briefed by either side, why we should not begin by asking whether or not the NLRB's quorum requirement, especially as it relates to the August 26th order, is jurisdictional. We believe it is jurisdictional, Judge. We believe that from the time that the board issued its first adjudication on August 26th until the time that they were still trying to wrestle with all the petitions for reconsideration that were filed, there was never a quorum. There was never three members of the board. A quorum is a statutory requirement. It's a statutory requirement that's contained in the National Labor Relations Act. And there's a case called New Process Steel. New Process Steel talks about power and authority to adjudicate matters. Isn't that what we have here? Yes. Yes, Judge. If Commissioner Liebman's term is over August 27th and the date of the order is August 26th, why is there a problem? Because the case law that we signed, Judge, indicates that the order was not entered until August 31st. It's not just ministerial. I don't believe so. I don't believe so, Judge, under the case law. Well, first of all, the NLRB is entitled to a presumption of regularity in the operation of their business, aren't they? I don't believe they are. You don't believe they're entitled to a presumption of regularity that you have to overcome? It's a complicated case, Judge, because we asked the NLRB for evidence to show that there was a deliberative process that took place before Board Member Liebman's retirement and we never received any information. So are we to assume that an order that reflects a date of entry is false? I can't speak to that. We requested discovery. It's interesting to note that when the Board… Isn't it evidence in and of itself? No, Judge. Of the date of the order. Because we have a five-day gap here, an unexplained five-day gap. It's uncontroverted that Member Liebman's retirement… It's not evidence at all. The date on that order, that is your position, that the date on that order is not evidence at all? No, I don't believe it's evidence at all because it's such an important issue in this case as opposed to when does the appeal period start? Do you have a timely appeal or not? But doesn't this happen in every case? Doesn't this happen in every case? Every day, my colleagues and I enter orders and we sign it on a particular day. And in our minds and according to the clerk's office, apparently, those orders are entered as of the day that we sign off on them. But not always. Not always, but certainly it reflects the date that we sign. It reflects the date of the order. We had a situation where there were some deliberations that took place. The Member Liebman retired. There was a five-day gap and then five days later… What difference does it make if you find that the order was as a matter of fact, entered on the 26th, but as a ministerial matter, as Judge Van Ankerman has suggested, it simply wasn't entered until a few days later on the record. What difference does that make? I believe the entry of an order is important in this particular case because it starts the appeal period. Other than your belief, Mr. Capozzi, what is the importance of that? I think the importance of that… As a matter of law. We need to rely on when a decision was properly entered. So what you are saying is we can rely upon the clerk's ministerial entry on a docket of an order as accurate, but we cannot rely upon the accuracy of the date of the order as entered by members of the NLRB panel. Is that what you're saying? The fact that there was a five-day gap in this case, especially when she's retiring, and it's an important issue, Judge, because we needed member leavements for there to be a quorum. Unless my memory is failing me again, you conceded that this was not your strongest argument. I agree. There are numerous issues of great import in this case. Yes. Don't you think your time could be spent more valuably on some of those? I agree.  I agree. Why aren't your requests for reconsideration moot? That's what I want to hear from you. They're not moot, Judge, because the request for reconsideration, having been acted upon by a board that did not have the authority to adjudicate those orders because there was no quorum. Again, taking into account… Let's move up to the recess appointment problem. The President of the United States appointed some people. There are some rulings that were made on some of your motions for reconsideration. Where does that leave us? Do we have jurisdiction to hear this appeal? Is there a final order from the NLRB or not? I believe there isn't, Judge, because the various petitions for reconsideration were never acted upon. Is that why the August 26th order is black? Is that why it's a nullity? Is that why it's confirmed? There were petitions for reconsideration. Because the motions for reconsideration were not properly acted upon? Yes. And the fact that the NLRB requested a stay in these proceedings twice in front of this court indicates that they believed that there was no final order issued in this case because they had to adjudicate the two petitions for reconsideration. What could we do with respect to those reconsideration orders if we found the August 26th order to have been proper and that the NLRB had jurisdiction to act? I think the August 26th order, Judge, is because we raised issues that are intertwined with other petitions for reconsideration. What's the relief here that we could provide with respect to the reconsideration motions in that scenario? You could remand it to the board or you could stay the proceedings until such time as the board has a proper quorum in the case and then they can issue a final order that you can act upon or, based on the avoidance doctrine and the fact that there's judicial economy at stake here, I would ask that you adjudicate the case on the merits. And if we determine the August 26th order to be a nullity or infirm because the NLRB lacked jurisdiction, what is the moment, what is the import of either of the two denials of reconsideration? The import is that the board never had the authority to act and it only has the authority to act if you remand it to the board. Mr. Capozzi, don't you win if we strike down the August 26th order? Yes, I believe we do. Then I don't know what you're talking about. I believe we do win, Judge. But we're also talking about the subsequent orders and we're also talking about... Well, the subsequent orders are of no moment if you win on August 26th, right? You don't care about a moment. What's the definition that you argue for recess, Mr. Capozzi? Excuse me, Judge? What definition would you argue for as applicable to recess? I would argue that what the original framers of the Constitution intended. It says in recess, it's a singular term. We had a situation, Judge, where historically and from a presidential standpoint, for 150 years, everybody knew what in recess meant. Sine die? Sine die? Yes. When the Senate was in recess, people knew what that meant for a long period of time. It's only recently where we've had that interpretation that our framers intended to have. What did the framers intend? The framers intended that when a president appointed somebody, that generally that person be subject to the advice and consent of the Senate and that the Senate approve that person. Isn't the key when you're looking at the framers' intent that the Senate be available for advice and consent? You say for 150 years we all knew what it meant. It seems to me, looking back at what Hamilton said in the Federalist Papers, obviously the 1905 report from the Senate Judiciary Committee, that you can make the exact opposite argument, that it is in fact clear that when the Senate is not able to provide advice and consent to the president, that's when the recess is on so that these, to just sort of skip ahead, these pro forma sessions that we're all discussing, the Senate is obviously in no position to provide advice and consent. So from Hamilton to today, if that's a uniform view of what recess is, the ability to provide advice and consent is not there. It's a recess. I don't agree with you, Judge, because in this particular case with these three recess appointments, President Obama actually nominated these three board members and submitted their nominations to the Senate while they were in recess and it was only because the Senate wouldn't act upon them, which is their right to do. They have to advise and consent. And generally, I mean, it's all about checks and balances, separation of powers. Historically, they did not want a king or a dictator or a despot ramming appointments down. Is that to say then that the default position is the course of advice and consent and that the exception is the recess appointment? The exception is the recess. The recess that has been the recess for the past 200 years. You know, the Senate has the ability to approve these three members. The President was basically told that the Senate was not going to approve these members. Under the Constitution and the way the law has been interpreted for the past 200 years, he had to wait until the Senate was in recess. Well, wait a minute. You know, you keep saying the past 200 years are actually our republics a little older, but my point is this is not something of new moment here. I mean, you can go back. You know, Washington made recess appointments. President Washington made recess appointments. Many presidents over the course of time and certainly through our reading to prepare for today, we know that the last five or six presidents have each engaged in making recess appointments. So, you know, this is not a recent vintage. And with the presumption of constitutionality with regard to presidential actions, why wouldn't we say that this is, in fact, in accord with the practice of the President  the back and forth between the executive and the legislative branches? Because if you accept that interpretation, presumably the President can appoint anybody he wants with no oversight by the Senate. If the Senate takes a lunch break, if the Senate takes a bathroom break, the Senate could just. All right. So what is. . . I understand that point very well. So what is your definition of recess? Is it the sign of die adjournment that the judge and anchor have been asked about? Yes, and that's been the way in my reading of the cases, my reading of the Federalist Papers, my reading of what Alexander Hamilton said, my reading of what Attorney General Philander Knox said about recess appointments. That's our interpretation. That's been the law. What should this panel, what should this court make of the more modern development, though, at least a practice that was not followed at the time of the founding and for quite some time thereafter, where the Senate acts in a way really through artifice to frustrate the President and really doesn't take what it would define as a recess solely for purposes of not allowing him the opportunity to make recess appointments? Well. . . That's clearly what's going on here. So what do we make of that? What I make of that is that doesn't change the fact that the Senate has the right to approve presidential appointees and the fact that . . . The fact or the structure of Article II, Clause 2 and 3. That's an important point, not the fact because fact is practice, fact is history, or are we talking about the structure of the Constitution itself? The Constitution is the Constitution, Judge. It hasn't changed for 200 years. Well, we have a few amendments that have taken place here. I know. I know there have been a few, but in this particular case, that hasn't changed, okay? The Senate is more available today than it was 200 years ago. They are available for advice and consent. If the President wants to put appointees forward that are not going to be passed by the Senate, that is an important . . . You feel adjournment is a different term than recess as used in the Constitution? I think adjournment appears five or six times. Recess twice, once in reference to Congress, once in reference to the state legislature. Yes, two different terms, yes, Judge. And what is the significance of the pro forma sessions? Does that mean anything? I think what it means is that the Senate is not in recess. That's something that the Senate has the ability to do. And actually, the House wouldn't let them go out, would they? Correct. Couldn't let them. The House has to give permission, and they didn't give permission, right? Correct. And that's an important objection balance. Shouldn't we look at the pro forma session as a machination developed by the Congress to impede the President? I mean, you can't say that . . . well, I shouldn't say you can't say. Tell me how you would argue that the pro forma session is really something that emanates from the framers' intent. I don't see it. Well, first of all, during the session, the three nominees were submitted while the Senate was in session in this particular case. The problem was the Senate didn't like those appointees. That doesn't give the President the right to just disregard that. That's an important point. You're not answering the question. Can you repeat the question? That's okay. My question was, you have argued thus far that the definition of recess emanates from the framers' intent. Yes. And my question to you is, from what may we divine the framers' intent was vis-à-vis the pro forma session? The pro forma session appears to be a machination developed by the Congress to impede or frustrate the President. Now, you've said that the Senate has no recourse. Well, the Constitution provides the recourse, right, because any of these recess appointments are for a time certain, which means that the President will only have the services of the individual for a limited amount of time, and then they must go before the Senate. Well, I think you get that from the words of the Constitution itself, because it says in recess. That term has had a consistent meaning for a very long period of time, and that's where you get that language from. In recess, people knew what that meant for a number of years, okay? The fact that the Senate has done what it does internally to maybe narrow that in recess standard doesn't change the fact that the Constitution says in recess. When a pro forma session takes 20 seconds, are they in session? Are we as a court looking at the substance of the pro forma session to say that somebody banging the gavel and saying we're in session, and then banging the gavel 20 seconds later and saying we're out of session, that that really means that they're really in session, and that we're to believe that for that period of time, the Senate is available to do business. Most important, the Senate is available to provide advice and consent to the President. Well, even during that period of time, Judge, there were things that were done by the Senate when they were in that. One brief thing they did. That's probably a long one. The 20 seconds. Well, they did, but it was important with voting tax. I think that was pretty important. More fundamentally, Mr. Pelosi, whether they did business or not, who or what branch of government should be in the position to define and declare whether the Senate is in session or in recess? The Senate itself or the President of the United States? The Senate. Absolutely. I don't believe that you reserve any time for rebuttal, but we'll give you some later on. This is an important case, and I know there are two people who will be arguing on the other side, so the panel will make a determination as to how much time to put on the clock for rebuttal. Thank you. One last question. Yes, sir. Suppose the Senate utterly refused to act. High officer positions in the United States government could not be filled. The nation is in crisis. There's nothing the President could ever do, in your theory. Well, if you think of— We're under threat. I mean, it's not hard to conjure up what could happen if key Cabinet positions weren't filled, if other positions weren't filled. Suppose the Senate was utterly obstinate. None of these positions could be filled, and we're in an utter crisis. There's nothing the President could do? Well, Member Becker was appointed via a recess appointment, and, you know, Judge, we've been through the Yellow Fever epidemic, we've been through national wars, we've been through a civil war, and the in-recess standard was in effect then, and the country didn't collapse. Could you— We're talking about three members of the national— In a situation that— Could you just answer Judge Van Antwerpen's hypothetical? If we're in a constitutional crisis, what is the President, what is the government to do? Well, again, I think I did answer the question because we've had historical crises before, and the government didn't collapse. This is something that the Senate has a right to do. They have a right to vet appointees. Specific example that I want to know about. First of all, because we would still have a President, I'm struggling, and maybe your adversaries can help me with an example where the Republic would be at risk because a particular cabinet officer was not in place despite the continued operation of deputies' assistants and the entire bureaucracy of that department or agency to operate. But putting aside a concrete hypothetical of that kind, does the President have the authority to call the Congress back into emergency session? I believe he does. In such an instance. Yes, and I think that's an important— We'll have you back on rebuttal. Thank you. Ms. Brinkman? May it please the Court, Beth Brinkman from the Department of Justice. I'm here with my colleague, Ms. Raja Paksa from the National Labor Relations Board. I'm here to address the threshold questions and constitutional issues, and Ms. Raja Paksa can address the labor law issues. And the threshold question, of course, that the Court has set up, an inquiry, is it jurisdictional? On your brief, our user at least suggests that questions regarding the appointment's power are not jurisdictional. We've raised specifically in this case that question, and what I would ask is, don't we need to look to New Process Steel and resolve that question through the lens of New Process Steel, which makes the National Labor Relations Act's core requirement jurisdictional? Well, Your Honor, we found your questions very helpful, actually, and I think I would like to distinguish between, first, the jurisdiction of the Court and the authority of the National Labor Relations Board to exercise their statutory authority. On the latter point, if there's a problem with the National Labor Relations Board exercising their statutory authority, that doesn't go to the finality of the order. That goes to the validity of it. This Court's jurisdiction is unquestioned here. You have jurisdiction to review the August 26th order under 160E and 160F of the National Labor Relations Act. You have regulations that provide that motions for reconsideration do not prevent, I forget the exact term. They don't stay the effectiveness of the order, Your Honor, that's exactly right. Unless otherwise what? That's exactly right. The question I was referring to that the Court addressed to you is in the memorandum of March 11th, and it's the first question. Is the NLRA's statutory quorum requirement a jurisdictional requirement that must be satisfied before the NLRB can exercise its authority in a case? Yes. So I wasn't asking about this Court's jurisdiction. Yes, I was looking at all of the questions together. Yes, that is a question. I would not necessarily characterize as jurisdictional, though, Your Honor. It is a question of the validity. This is an important point. We can't equivocate on whether it's necessarily jurisdictional or almost jurisdictional or maybe jurisdictional. It is or it isn't. Well, the problem is jurisdiction is used in so many different ways. And we know the Supreme Court has been trying very, very hard for at least the last 10 years to clarify that in cases like Eberhardt and numerous others. We have a discreet example here. Why is this not jurisdictional with respect to the NLRB's action on August 26th? If they do not meet the statutory quorum requirement, they are without authority to act in that case. And authority is jurisdiction, isn't it? Don't we know that from the process? Of the NLRB, but not of the Court. I'm not asking about that. Yes. I'm asking about the NLRB. Yes. Because if there's no order from the NLRB, there's really nothing ultimately for us to determine one way or another. There I completely disagree with you, Your Honor. Just because there's some problem with the order doesn't mean it doesn't exist. All right. Let's assume we exercise 1291 jurisdiction. We have jurisdiction to determine that the earlier order was a no. Right? It's an invalid. Just as if the NLRB had exercised authority over some group of employees that aren't covered subject to their statutory authority under the Act. Yes. That means the order's invalid. But the order's here before the Court to review. We also thought that your questions really focused on exactly, from the Court's perspective, what needs to be decided in this case. And we found that very helpful. I think that the discussion earlier, the Court indicated, really, what is before the Court and all the Court does need to decide, I would say, is one thing, the validity of the August 26 order. And there are two real issues on that. There are the issues of labor law about the actual unfair labor practice itself. And the only other issue, and all of the subsequent, these four motions for reconsideration, the only issue that- What effect do those motions for reconsideration have, if any? They become irrelevant if the one issue that remains, that goes to the merits, this Court resolves. And that is the question about whether or not nailing an order three days after it's decided, somehow, undo its validity. We don't have a problem with that. Right. I think under any standard review, you can decide that. And if you decide that without relying on any of- How about the jurisdiction problem with this Court, though? Getting back to that. You were about to address that, I think, wasn't you? Yes. I think there's no problem with the jurisdiction of this Court under 160E and 160F. There's a petition- What about the request that we hold our decision in abeyance? I know the regulations say motion for reconsideration doesn't cause a problem. But what about, unless otherwise ordered, how about those two requests that we hold our decision in abeyance? Does that have any effect at all? No. Why not? That's in the national labor- At this point in time, all the motions for reconsideration have been denied. Unless they weren't denied by properly appointed people. No, we don't think that wouldn't do it. Unless you were to review some kind of additional rationale or something that was done by those actual members, and this is when I'm getting back to the first motion for reconsideration was the only one that involved any challenges to the Aug. 26 order. There were two challenges. One has been abandoned. That was the labor law one about an argument there have been changes in duties. There's nothing for you that's abandoned. The only other issue that was raised in that first motion for reconsideration was the issue about member lead men retiring the next day and if a three-day late mailing could undo the validity. If you decide that directly on your own under general principles of administrative law, that's it. The Aug. 26 order is valid. If, however, you looked and- I still don't understand. If there was an improper denial of the third and fourth, I guess second, third, and fourth motions for reconsideration, if that was not properly denied by the board because they weren't properly appointed by the president, do we have a final order that is appealable to us and over which we have jurisdiction? Yes, you do. Under 160E, our petition for enforcement is here before the court. It's a final appealable order. No question this court has jurisdiction over it. It's not affected by the motions for reconsideration. But why? Because it makes clear under 160E that when we file a petition for enforcement, it vests this court with jurisdiction to review that petition. We don't really have jurisdiction until we get the record from you, right? You don't have exclusive jurisdiction under 160E. Yes, the Supreme Court has said we both have jurisdiction. That's right. But I still don't understand. When you ask us, court, hold your decision. We've got some matters that we have to rule on that are important, I guess. Why doesn't that create a problem with our jurisdiction now? Your Honor, the agency is doing that out of a matter of discretion. As you just pointed out, the board still had concurrent jurisdiction. And wants to give the participants an opportunity to clarify so that the board, you know, it's in the litigation efficiency. The board will correct errors before it wastes the court's time. So if there's some motion for reconsideration, they will hear it. The first motion... Suppose you never ruled on those. What effect would that have? If we had gone through... You asked us to hold our decision in abeyance, and now you never ruled on the second, third, and fourth motions for reconsideration. You would still have concurrent jurisdiction under 160E and F. That's absolutely clear. And under the board's regulations, there's no... We don't need a final order from you. The final order is the... The order that's appealable is the August 26th order. And as you pointed out, once we then... The board files the record with the court, then you have exclusive jurisdiction. There's no question about the court's jurisdiction. If there was some question about the validity of the composition of the members, which we think there isn't, that would just go to whether or not you enforced the August 26th order or subsequent rulings. But we do think that... You've asked everything on that. Yes. We do think that if you were then to review, for example, some kind of other issue that came up in the first denial of reconsideration, then if you're actually reviewing that decision, then you would have to look to the questions of the validity of that first forward. That would be the challenge to Pierce and the challenge to when Member Becker's term expired. But even that doesn't raise the pro forma issue to the challenge of the January appointments. Those were only for the later two denials. And we just think that becomes irrelevant if you go back and look at the original order. And instead of reviewing the denial of the first motion for reconsideration, the one issue's abandoned. You can decide under any standard of review here, we think. So that means if we're only looking at, if I understood you correctly, if we're focusing on the first motion for reconsideration, the one in which Becker is at issue, that pro forma is to the side and it's really a question of intercession, intrasession? No, Your Honor. If I could clarify. If you were looking at the first... If you're looking at the Liebman issue on your own, we don't think you even need to look at the composition of the board that denied the reconsideration, because you're not reviewing their denial. You're just reviewing the Liebman issue. So we never get to that. Right. But if you did, then just have to... I see my time is up. No, please answer. I also feel bad. I don't want to take all my colleagues' time. So if you look at the first denial of the motion for reconsideration, the one on December 30th, in the next, the second motion for reconsideration, Pierce's participation was challenged on a recusal issue that the board would address. In the third motion for reconsideration, then that was the first issue that's at all related to recess appointments. That, though, is not a challenge to the appointments of Griffin or Block or Flynn. It's to when Member Becker's term expired. But Member Becker's term expired is a very straightforward issue, we think, if you get to this point. He himself was a recess appointee. That's why this issue comes up. Which presents another issue. So... Issues... But on the challenge they have raised, and I should say, we think all of the other issues past pro forma that happened and the intercession are waived and forfeited, raised much... Except to the extent they implicate the jurisdictional question, which this court has raised. In our supplemental issue, we pointed out at least two Supreme Court cases, the Freitag and the Vermont Agency case, which both make clear that appointments issues are not questions of the court's jurisdiction. But going back to the question about the first motion, the denial of the reconsideration motion, the challenge to Pierce, and then the challenge to Becker has to do with when his term expired. And under the recess appointment clause, an appointee's term expires at the end of the next session. So that's what we want to know. We want to know when the first session of the 112th Congress ended. Right. There was no order here adjourning Senate DA. Because there was no order adjourning that session, that enumerated session of Congress, it did not end until the January 3rd at noon when the new session started by operation of the 20th Amendment. So he was clearly on the board on December 30th. Maybe I didn't articulate my question well. I get the whole December 17th is before January 3rd. It's the second session. I get that. But if we were to interpret the only valid session, as I presume New Vista would propose, that the only valid recess is an inter-session recess, then the issue would be before us, right? We believe... Because Becker is clearly an intra-session recess. Yes, Your Honor. I have to say, not only do we believe that the... What New Vista has raised belatedly in their 28-J letter that we think is waived and forfeited was this intra-session issue that was decided in old canning. But the only challenge that New Vista brings on that is to the January 2012 appointment. Even then, they've never challenged the appointment of Becker. But you're right. It gets complex when you go back to the records. But there are issues that could possibly be raised. We think even though, then, you could get into issues of de facto officer doctrine. I mean, it's so late in the day for that. Well, come on. Didn't Freitag... You cited Freitag a minute ago. Didn't that basically say that we can here waive the appointee's clause or arguments because it's such an important issue? You can, Your Honor. But it also makes quite clear you don't have to. And here, we think, where it was raised so late in this 28-J arena after the briefing. And indeed, when another challenge, the pro forma issue, had been raised in briefing. How about Ryder? Are you familiar with that? Ryder versus the United States? Didn't they say basically in there that one who makes a timely challenge to the constitutional validity of the appointment of an officer is entitled to a decision on the merits because it's so important and crucial? No, Your Honor. We think that Freitag and also the Vermont agency case make clear, though, that it's not a jurisdictional question. It's a question for the discretion of the court, certainly, to weigh into that. And I think here, there's all the more reason that it seems unnecessary to reach these constitutional questions. And there could be an avoidance issue here in the very unusual situation of four motions for remuneration. Let me ask you something else. If we do have to reach this issue, at what point can't the president make a recess appointment? When the Senate's out for lunch? I'm not trying to push it to the absurd. No, absolutely understand. I understand what I'm saying. Yes, and if I might follow up, what is the limiting principle that you advance? Because quite honestly, I couldn't find it anywhere. Absolutely, Your Honor. The executive branch has not claimed authority to make recess appointments during lunch. There is a limit, and I think it goes back to... What is the limiting principle? The question, it goes back to how we defined what a recess is. And a recess is, under the definition at the time of the framers and today, it's a suspension of business. And here, I think it's very important to realize that the Senate... What's a suspension of business? The Senate and the executive agreed here what it was. When the Senate entered its order for the period from January 3rd to January 23rd, the order said no business to be conducted. And indeed, on that same day, they referred to this period as recess. So the Senate itself... What's the textual base for suspension of business being the equivalent of recess? The plain meaning of the terminology recess at the time of the framers, we cite dictionary definitions from that period of time. The recess was a break in business. We also... Then it can be any break in business, can't it? No, Your Honor, because it goes to... I should get the second part. It's to the unavailability of the Senate to provide advice to the Senate. When in today's world is the Senate unavailable? When the Senate is in recess, Your Honor, as they were here, they had an order, a unanimous consent order, that said there would be no business conducted. And that is what... But they can't go out without the permission of the House. But this is what the structure of the recess appointments clause is about. The Senate has a choice. They can stay in session and be available to provide advice and consent at all times. Then there is no presidential independent authority to appoint. But if, as the framers realized, there would be times when the Senate would be unavailable for advice and consent because of their duty to their constituents, if nothing else, then at those times, and at only those times, the President has a limited authority to make temporary appointments. That was the balance that the framers struck. And I should urge, Your Honor, otherwise there would be a vacuum of appointment power. If the Senate is unavailable to provide advice and consent... Didn't they envision a system of checks and balances? Didn't the original framers mistrust people in office and want to put strictures on them and controls? And there were all kinds of issues, Your Honor, when you go back into the historical record of there being a lot of questions about the legislature acting in that role. And indeed, that was why more power was given to the President for those very reasons. So there is a balance there. And I have to say, Your Honor, if the mere dabbling in of 21 seconds or 30 seconds could upset this balance, there would have been no need for the past decades of the negotiations between the executive and legislative branches about the recess appointments power. Branch, it's like so much of the operation of democracy isn't pretty, but let me ask you the same question that I asked Mr. Capozzi. And that is, in the end, who ought to be able to define whether or not the Senate is in recess or whether the Senate is open for business? The Senate or the President? Here, there isn't really that question presented because under the Senate's own words, holding the Senate at their words, there was no business to be conducted during this entire period. And in the same orders that day, they refer to this period as recess. So I think that question isn't here because actually the political branches agree here. But further than that, I think that in this situation... How can that be what they meant if their purpose really was to frustrate the President in the exercise of his appointment? Well, Your Honor, the pro forma sessions had another role, I think, as Judge Van Antwerpen had mentioned about the adjournment clause, which is a different provision in the relationship with the House and whether or not these would meet that requirement. That's a very interesting question. We actually think the better reading is that they did adjourn. Then you have the question about whether the House consented. But that's different than the recess appointments clause. And certainly when this is an enumerated power of the President, we do think there would be some deference given to the President's reasonable interpretation. And it certainly is a reasonable approach when the Senate has said they are unavailable, they are out on business for this period of time. So we think there is the President's determination of when it's recess. I would say it's not one of these issues like the parties suggest the rule of proceedings. I mean, it's not an internal Senate... I think... Well, you might as well come right out with it. Yes, Your Honor. May I, as presided, declare recess? Yes, Your Honor. I do think that here, and again, we found your questions very helpful. Once you dig through the four motions for reconsideration, the three denials, the various compositions of the board, and you get back to the August 26th order. But admittedly, we went to any other merits challenges to that order where there were two. In the first motion for reconsideration, one's been abandoned, and the only other one is Liebman. And we don't think that... Remember, Liebman, that claim is something that you need to look to the grounds that the board denied that reconsideration on, that you could do that directly on your own. Let me ask you... Can I... Let me ask you this. Let's... We asked you all to edify us on your views on no candy. Suppose we get to the issue. I understand your argument about how we don't get to the issue, but suppose we get to the issue. What's your focused response on the manner in which the D.C. Circuit went about teasing apart the recess appointments clause? You know, some might call it tortured. Some might call it really reflective of deep thought. You know, the, arise, happen, sort of teasing each of them apart. What would be your approach to us as to what we should think about that approach to discerning what the framers meant and what they could have meant? I think first on the question about whether or not the recess appointments clause applies during intra- as well as inter-session recesses. On the text, we think that the... It is too tortured of a reading. When you look at the recess, there are many uses of the in a generic sense. The example we like the best is the pen is mightier than the sword. That's not talking about a particular pen. You don't need to impose that definition on the... The definite article can be used, but it can be used quite clearly by your example, both to recognize the singular as well as the plural. That's right. And I think it's possible to engage in both deep thought and come down with a tortured analysis. I've done it myself from time to time, Judge Maynard. Well, I should also say we think it's important to look at the text. It's just how, whether or not these are the most reasonable interpretation or indeed ones from the framing.  that it was a singular use of recess. But the first Congress had three sessions. There isn't just one session. So you're going to talk about the recess. It's not a... There is no the recess necessarily. There's always more, even if you're talking intercession. So we don't think either of those ways in favor of intercession. And we... Does the word session appear in the text of the Constitution? No, Your Honor. Well... I don't think it does. It certainly doesn't in the provisions we're talking about. Not in the clause. Well, it says at the end of the next session for the expiration of the term, but not in the language that we're speaking about. The other thing I would say is at the time of the Noel Canning case, the employer there had mentioned these issues but had told the court they did not need to reach either of the intro or happens issues because they were focused on pro forma. So they said, here's a little background. You don't need to reach it. You should hold the line where it is. So there was not full briefing on those issues. They were mentioned, but there wasn't robust briefing on it. And when you go back and do that kind of briefing, which we now are engaged in, if you look at the historical context at the time, introcession was well understood to be... An introcession recess was to be a recess when you use that term generically, both intra and inter. We have evidence from the British Parliament, Jefferson's Manual on the British Parliament, the Articles of Confederation, the Constitutional Convention itself. There were various states, constitutions, and in the Constitution itself, the Senate Vacancies Clause. They all refer to the recess, and yet we have historical examples in each instances where there was either in common parlance or in some state legislative thing, an understanding that that also meant introcession recess. And of course, we have an enormous amount of history here, and we have since 1921, obviously, the Attorney General opinion on that. I don't know if you want me to address the happen issue also? Yes. Okay. It would be helpful, yes, please. Okay. On the happen issue, that is the question really about when the vacancy arises. And here, we go back to 1823 with Attorney General Wertz's opinion given to President Monroe, himself one of the founders, that wholly supports our interpretation here. There is an opinion from the first Attorney General, Attorney General Randolph, that took a different view. And if you look through George Washington... Given to President Washington. Washington's papers... It was a Columbia guy, John Jay. Well, it turns... He was the first. It turns out when you look at President Washington, the President's actions, however, he didn't even act consistent with that when he, for example, appointed the U.S. Attorney to Kentucky. We know that he knew that that position had been open for years because the reason the earlier nominees didn't take the position is I believe they didn't want to enforce the whiskey tax or something like that. So he knew that that position had existed well before the recess during which he was making the appointment. There's also an example about the first engraver at the Mint also makes clear that that was created, that position was created by law during a session so that vacancy would not have arisen during a recess, let alone the same recess during which the individual was appointed. And that appointment actually came about after an intervening session. So we have an 1823 opinion that resolved any ambiguity we think that there could be. Finally, I would say on both of these points, we actually also have evidence of legislative acquiescence. The Pay Act, which can be traced back to the mid-1800s and was amended in the 20th century also, was an enactment by Congress which authorized the pay for recess appointees. At some point, you couldn't get pay until you perhaps were later nominated, all of these things, and it was later amended. Clearly, there was no exception for people who were appointed during the intra-session, and the Comptroller General has interpreted it consistent with our views. And the Congress there was not saying that the President had authority to make these various types of appointments, but they controlled the ability to pay such an appointee. And if they wanted to hold the with pay until they got a chance to review the nominee, that was within their authority. It was a very rare type of appointment, though, until about 1950, wasn't it? In fact, Your Honor, there weren't that many intra-sessions.  Well, it turns out we found more than, in fact, the Congressional Research Service has found more than what the Noel Canning opinion referenced. There were more than that, but there weren't that many long intra-session recesses, so there didn't need to be appointments during those periods. Thank you very much. Thank you, Your Honor. Appreciate it. May it please the Court. My name is Milakshmi Rajapaksa. I'm counsel for the National Labor Relations Board. As Ms. Brinkman mentioned, the Board is seeking enforcement of its August 26th decision and order, and I'd just like to talk about some of the labor law issues  First of all, in the Board's decision and order, in the Board proceedings, NuVista had the burden of proving the supervisory status of its LPNs, and as the Board found, NuVista failed to carry its burden. Specifically, NuVista put into evidence 33 forms purporting to show that LPNs have the authority to discipline the CNAs who work alongside them at the Center. But if you look at the 33 forms, 19 of them were prepared by someone who occupied a dual role and had greater authority than the other LPNs in the unit, and there are actually only 13 forms that were prepared during the relevant time period by people who served solely as LPNs. Of those 13 forms, moreover, only three were supported by LPN testimony, and the LPN testimony shows us that the involvement of LPNs in preparing these forms is very, very limited. What the LPNs essentially do is they provide a fact statement. They fill out the top portion of the... Correct me if I'm wrong, but wasn't there, after some of the process against NuVista had been initiated and even a decision taken, NuVista changed some of its procedures relative to the authority of LPNs? After the petition for representation was filed, yes. That is what they had claimed. Apparently they were not comfortable with what their previous procedures had suggested were sufficient for discipline authority, so they amended them, is that right? That's correct, Your Honor. As I was saying, the three LPNs who did testify specifically as to what they did in regard to the three forms that they're associated with showed that they filled out a fact statement. They then passed the form on without any recommendation to a higher-level official at the center, and that higher-level official conducted a complete investigation, which then was passed on, all of the paperwork was passed on to the director of nursing, and the director of nursing would, in her discretion, determine what discipline should issue. So at no point in this process, and this is what the record evidence shows, did the LPNs intervene to actually provide any input in what discipline was to issue. Ms. Roger, I think NuVista has said at some point that their LPNs can discipline CNAs and that senior administrators don't second-guess the LPNs. Am I correct about that? Have they taken that position? They can't second-guess the LPNs' factual determinations. There may be some general testimony to that effect in the record, Your Honor, but if you examine the whole record, that testimony is... Well, I'm not sure they've pointed it to anything in the record, which is why I raised the question. Am I accurate, though, in characterizing their position? I understood that to be a point that they raised, but we were not able to find anything in the record that supported it. Right. If there is anything in the record, two of the LPNs testified that they can issue discipline or make recommendations, but they were unable to point to any specific incident in which they had done that, and there was also no documentary evidence that they had done that. That should certainly support the regional director's determination, shouldn't it? Yes. Yes, Your Honor. So, given the record evidence, the Board's position is that NUVista did not carry its burden of proving the LPN's supervisory status. The Board submits that there is substantial evidence to support its findings, and the Board respectfully requests full enforcement of its August 26th order. Thank you. Thank you very much, Ms. Rajapaksa. And let's put five minutes on the clock right now. You're on our time. It may take longer than that, but as Judge Becker used to say, you're on our time. I would just like to raise a few comments to some of the points made by my colleagues. With respect to what should the court do in this case in terms of adjudication, I think if the court finds that the LPNs were supervisory, the inquiry ends there. I think that's pretty clear. I think that if the court finds that the LPNs are not supervisors, then we have to get to the constitutional question, the jurisdictional question, the quorum questions that we've talked about. On the supervisory issue, the Third Circuit case law on this issue is very clear. In the Attleboro case, the Pasadena case, all a LPN has to do is supervise, has to have a supervisory authority. They don't have to actually discipline CNAs, but in this particular case, you had 33 instances over a six-year period where LPNs disciplined CNAs. I would propose that that's a substantial number of disciplines. The other thing that was in the record that I think was unrefuted was the fact that the LPN had the authority to decide whether or not to impose discipline or not. Believe me, I'm not trying to argue your case for you, but to make the best use of your time, I think if you read your panel correctly, there weren't a lot of questions. If you asked by me in the last presentation, your time might be better spent on the other issues. Okay, thank you, Judge. Appreciate it. It's our position that we don't believe that a final order exists, and we do believe that that's jurisdictional under Sections 10E and 10F of the Act, which require a final order. I think it's telling in this case. What about the provision of the regulations that says that the motion for reconsideration shall forget the exact wording, but it doesn't cause a problem according to the regulations? I don't agree with that either, Judge, but that's the motion, okay? That was filed, that was adjudicated on January 3rd by Member Becker, who, if you buy the NLRB's arguments, should have been off the board a month before. How's that? Because... Their argument is that the end of the... He's March 27th. No, no, that's Liebman. I'm talking about Becker, Judge. I'm talking about Becker. The motion for reconsideration was adjudicated on January 3rd. Member Becker participated in that decision, and if you accept the NLRB's recess issue, he would have been off the board December 17th, okay? The first petition for reconsideration was an important question that was raised, aside from the Member Liebman question. And my counsel just kind of poo-poos that, but we said that there was a discrepancy between board precedent in that case, that there was a conflict between board decisions on the issue that we raised in our petition for reconsideration. That was never abandoned by us. That was always raised by us. So that issue was never reconciled when the petition for reconsideration was ultimately decided on January 3rd, again, lacking a quorum. They never addressed that question. We said that there's a split in board precedent here that has to be reconciled by the board. Regardless of what you said, 29 CFR 102.48D1 says a motion for reconsideration shall not operate to stay the effectiveness of the action of the board unless so ordered. Do you think their request to us that we hold this thing in abeyance was in order? I think the fact, Judge, that the board requested to stay twice in these proceedings... Is that an order? It was ordered by the court. By us. But do you think that constitutes an order from the NLRB just because they asked us to delay ruling on this matter? Didn't they do that so they would retain jurisdiction so that they could rule on it? I believe they asked for the stay because they didn't think they had a final order yet because the petition for reconsideration had never been adjudicated or decided. What's the point of having a petition for reconsideration if you can just throw it to the wind and cast it aside? There's a reason why we have a right to file petitions for reconsideration because the board makes errors. I want to go back to Becker for a minute because I want to make sure I understood you correctly. And correct me if I'm wrong on this. I thought that Becker was appointed on March 27th of 2010 and that the argument from your perspective his term should have ended December 17th. And from their perspective it's January 3rd because that's the end of the session. And the order is December 30th. Are all those facts accurate? Yes, Judge. So then please tell me why is it that it's the 17th in your view because that's the end of the recess as you understand the term recess. Right, they made the recess appointments. They said the Senate was in recess. So if the Senate was in recess then Member Becker's authority expired. Well doesn't Member Becker's authority expire at the end? I mean isn't that constitutional according to the RAC that it would end at the end of the next session and the end of the next session is January 3rd? The Board, they said that when they made those recess appointments it was because the session had ended. If the session had ended then they can't say that Member Becker's position continued because the Senate was in recess and the way this works is when the session ends that's when his authority to be a Board member ends. That's our argument. Okay, thank you. Thank you. Thank you very much. Thank you. Thank you to all of counsel. Freitag was mentioned and I just happened to note one sentence from that opinion which doesn't cut one way or another but it's a reminder of the importance of this case. The structural interest protected by the appointments clause not only of the federal government but of the entire republic. It's a very important case as well argued by both sides with very helpful arguments and I think that given the length of the fact that we didn't adhere to the clock  what I will refer to as a very important case. Thank you.